UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ARTURO MARTINEZ BAÑOS, et al.,

    Plaintiffs-Petitioners,

  v.

NATHALIE ASHER, et al.,

    Defendants-Respondents.

CASE NO. C16-1454-JLR-BAT

**REPORT AND RECOMMENDATION**

## INTRODUCTION AND RELEVANT PROCEDURAL HISTORY[1]

The Government[2] has a practice of detaining non-citizens who are subject to reinstated removal orders and who are seeking withholding of removal, for prolonged periods without providing custody hearings before immigration judges ("IJs"). This 28 U.S.C. § 2241 habeas class action challenges that practice in the Western District of Washington.

---

[1] A more detailed factual background and procedural history can be found in the October 17, 2017 Report and Recommendation. Dkt. 67.

[2] The respondents in this action are the Seattle Field Office Director for U.S. Immigration and Customs Enforcement ("ICE"), the Acting Director of ICE, the Secretary of the Department of Homeland Security ("DHS"), the Director of the Executive Office for Immigration Review, the Warden of the Northwest Detention Center, and the United States Attorney General.

REPORT AND RECOMMENDATION - 1

Edwin Flores Tejada[3] ("Mr. Flores") represents a class defined as "all individuals who (1) were placed in withholding only proceedings under 8 C.F.R. § 1208.31(e) in the Western District of Washington after having a removal order reinstated, and (2) have been detained for 180 days (a) without a custody hearing or (b) since receiving a custody hearing." Dkt. 67 at 17 (R & R); Dkt. 70 at 3 (Order Adopting R & R). His second cause of action seeks an order requiring the Government to provide each class member with a custody hearing before an IJ after six months of detention and every six months thereafter. Dkt. 38 at ¶¶ 96-98. His third cause of action seeks a declaratory judgment that the Government's policy of detaining class members without custody hearings violates the Due Process Clause. *Id.* at ¶¶ 99-102.

The parties have filed cross-motions for summary judgment on these claims. Dkts. 72 & 75. As discussed below, the Court recommends that both Mr. Flores's and the Government's motions be **GRANTED** in part and **DENIED** in part. Specifically, judgment should be granted in Mr. Flores's and class members' favor on the second cause of action and in the Government's favor on the third cause of action.

## LEGAL FRAMEWORK

**A.    Reinstatement and withholding only proceedings**

If a non-citizen who is removed pursuant to a removal order subsequently reenters the United States illegally, the original removal order may be reinstated by an authorized official. *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 487 (9th Cir. 2007) (en banc); 8 C.F.R. § 241.8. To reinstate a removal order, DHS must comply with the procedures set forth in 8 C.F.R. § 241.8(a) and (b).[4] *Ortiz-Alfaro v. Holder*, 694 F.3d 955, 956 (9th Cir. 2012). When DHS

---

[3] The two other named plaintiffs, Arturo Martinez Baños and German Ventura Hernandez, have been dismissed, as has plaintiffs' first cause of action. *See* Dkts. 53, 67, 70.

[4] These procedures include obtaining the prior order related to the non-citizen, confirming that the non-citizen is the same person who was previously removed, and confirming that the non-citizen unlawfully reentered the United

reinstates a removal order, "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the [non-citizen] is not eligible and may not apply for any relief under this chapter, and the [non-citizen] shall be removed under the prior order at any time after the reentry." 8 U.S.C. § 1231(a)(5).

Section 241.8(e), however, "creates an exception by which [a non-citizen] who asserts 'a fear of returning to the country designated' in his reinstated removal order is 'immediately' referred to an asylum officer who must determine if the [non-citizen] has a reasonable fear of persecution or torture in accordance with 8 C.F.R. § 208.31." *Ortiz-Alfaro*, 694 F.3d at 956. If the asylum officer finds that the non-citizen has not established a reasonable fear of persecution or torture, and an IJ affirms this determination, the matter is returned to DHS for execution of the reinstated order of removal without the opportunity to appeal to the Board of Immigration Appeals ("BIA"). 8 C.F.R. § 208.31(g). On the other hand, if the asylum officer makes a positive reasonable fear determination, the matter is referred to an IJ "for consideration of the request for withholding of removal only." 8 C.F.R. § 208.31(e). The IJ's decision to grant or deny withholding of removal may be appealed to the BIA. 8 C.F.R. § 208.31(g)(2)(ii). Judicial review of the BIA's determination is available in the Court of Appeals. *See Ortiz-Alfaro*, 694 F.3d at 958-60.

In withholding only proceedings, the jurisdiction of the IJ is limited to consideration of whether the non-citizen is entitled to withholding or deferral of removal. 8 C.F.R. § 1208.2(c)(3)(i). If the IJ grants the non-citizen's application for withholding of removal, the non-citizen may not be removed to the country designated in the removal order but may be

---

States. 8 C.F.R. § 241.8(a). An immigration officer must then give the non-citizen written notice of the determination that he is subject to removal and provide him with an opportunity to make a statement contesting the determination. 8 C.F.R. § 241.8(b). If these requirements are met, 8 C.F.R. § 241.8(c) provides that the non-citizen "shall be removed" under the prior removal order.

REPORT AND RECOMMENDATION - 3

removed to an alternate country.  *See* 8 U.S.C. § 1231(b)(2)(E); 8 C.F.R. § 1208.16(f); *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004).

While withholding only proceedings are pending before the IJ or the BIA, DHS cannot execute a reinstated removal order.  *See Ortiz-Alfaro*, 694 F.3d at 957; 8 U.S.C. § 1231(b)(3) ("[T]he Attorney General may not remove [a non-citizen] to a country if the Attorney General decides that the [non-citizen's] life or freedom would be threatened in that country because of the [non-citizen's] race, religion, nationality, membership in a particular social group, or political opinion.").

**B.     Statutory authority for immigration detention**

Two statutes govern the detention of non-citizens in immigration proceedings:  8 U.S.C. § 1226 and 8 U.S.C. § 1231(a).  "Where [a non-citizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention."  *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

Section 1226 provides the framework for the arrest, detention, and release of non-citizens who are in removal proceedings.  8 U.S.C. § 1226; *see also Demore v. Kim*, 538 U.S. 510, 530 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process.").  Section 1226(a) grants DHS discretionary authority to determine whether a non-citizen should be detained, released on bond, or released on conditional parole pending the completion of removal proceedings, unless the non-citizen falls within one of the categories of criminals described in § 1226(c), for whom detention is mandatory.[5]  8 U.S.C. § 1226.

---

[5] Although the relevant statutory sections refer to the Attorney General, the Homeland Security Act of 2002, Pub. L. No. 107-296 § 471, 116 Stat. 2135 (2002), transferred most immigration law enforcement functions from the Department of Justice ("DOJ") to DHS, while the DOJ's Executive Office for Immigration Review retained its role in administering immigration courts and the BIA.  *See Hernandez v. Ashcroft*, 345 F.3d 824, 828 n.2 (9th Cir. 2003).

REPORT AND RECOMMENDATION - 4

1       The Ninth Circuit has repeatedly held that after a non-citizen has been detained under §

2 1226 for six months, he is entitled to a so-called "*Rodriguez*" custody hearing, at which the IJ

3 must release him on bond or reasonable conditions of supervision unless the government proves

4 by clear and convincing evidence that he poses a flight risk or a danger to the community.

5 *Rodriguez v. Robbins* ("*Rodriguez III*"), 804 F.3d 1060, 1084-85, 1087 (9th Cir. 2015), *cert.*

6 *granted sub nom Jennings v. Rodriguez*, 136 S. Ct. 2389 (2016); *Rodriguez v. Robbins*

7 ("*Rodriguez II*"), 715 F.3d 1132, 1135 (9th Cir. 2013); *see also Singh v. Holder*, 638 F.3d 1196,

8 1203 (9th Cir. 2011); *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 949 (9th Cir.

9 2008). The Ninth Circuit has based its holdings on the canon of constitutional avoidance,

10 finding that prolonged detention under § 1226 without adequate procedural protections would

11 raise "serious constitutional concerns." *Casas-Castrillon*, 535 F.3d at 950; *Rodriguez III*, 804

12 F.3d at 1068-69. Most recently in *Rodriguez III*, the court held that IJs must consider the length

13 of detention, and "the government must provide periodic bond hearings every six months so that

14 noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'"

15 804 F.3d at 1089 (quoting *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1091 (9th Cir.

16 2011)).

17       Section 1231(a) governs the detention and release of non-citizens who have been ordered

18 removed. It authorizes detention in only two circumstances. During the "removal period,"

19 detention is mandatory. 8 U.S.C. § 1231(a)(2) (emphases added). The "removal period"

20 generally lasts 90 days, and it begins on the latest of the following: (1) the date the order of

21 removal becomes final; (2) if the removal order is judicially reviewed and if a court orders a stay

22 of the removal of the non-citizen, the date of the court's final order; or (3) if the non-citizen is

23 detained or confined (except under an immigration process), the date the non-citizen is released

1  from detention or confinement.  8 U.S.C. § 1231(a)(1)(B).  After the removal period expires,

2  DHS has the discretionary authority to continue to detain certain non-citizens or to release them

3  on supervision.  8 U.S.C. § 1231(a)(6); *Prieto-Romero*, 534 F.3d at 1059.

4        In *Diouf II*, the Ninth Circuit extended the procedural protections for § 1226 detainees to

5  those detained under § 1231(a)(6), holding "that an individual facing prolonged immigration

6  detention under 8 U.S.C. § 1231(a)(6) is entitled to release on bond unless the government

7  establishes that he is a flight risk or a danger to the community."  634 F.3d at 1082.  Specifically,

8  the court held that the government must provide a custody hearing before an IJ to non-citizens

9  who are denied release in their six-month DHS custody reviews and whose release or removal is

10 not imminent.  *Id.* at 1091-92 ("When detention crosses the six-month threshold and release or

11 removal is not imminent, the private interests at stake are profound.  Furthermore, the risk of an

12 erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is

13 substantial."); *see also id.* at 1092 n.13 ("As a general matter, detention is prolonged when it has

14 lasted six months and is expected to continue more than minimally beyond six months.").

15       At the time this lawsuit was filed, the Ninth Circuit had not yet decided whether non-

16 citizens who are subject to reinstated orders of removal and who are in withholding only

17 proceedings are detained under § 1226(a) or § 1231(a).  On July 6, 2017, however, the Ninth

18 Circuit held that such individuals are detained under § 1231(a).  *Padilla-Ramirez v. Bible*, 862

19 F.3d 881, 886 (9th Cir. 2017), *pet. for rehearing filed* (Aug. 19, 2017) (holding that reinstated

20 removal orders are administratively final when they are reinstated, even if withholding only

21 proceedings are pending).  The court did not address whether the petitioner was entitled a

22 custody hearing once his detention became prolonged.  *Id.* at 884.

23

REPORT AND RECOMMENDATION - 6

# DISCUSSION

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The parties agree that the only material fact is undisputed: the Government does not provide class members with automatic custody hearings before IJs. Thus the questions before the Court are purely legal. First, does the Immigration and Nationality Act require the Government to provide class members with such hearings after six months detention and every six months thereafter? Second, does the Government violate class members' due process rights by holding them for prolonged periods without an opportunity to contest their detention before a neutral arbiter?

**A.   Class members are entitled to automatic custody hearings every six months**

As noted above, the Ninth Circuit in *Diouf II* held "that an individual facing prolonged immigration detention under 8 U.S.C. § 1231(a)(6) is entitled to release on bond unless the government establishes that he is a flight risk or a danger to the community." 634 F.3d at 1082. The primary dispute between the parties is whether the holding in *Diouf II* applies to non-citizens who are subject to reinstated removal orders and have applied for withholding of removal; in other words, class members. Every judge in this district who has considered the issue— including the judges assigned to this case—has concluded that *Diouf II* governs. *Mercado Gonzalez v. Asher*, No. C15-1778-MJP-BAT, 2016 WL 871073, at *3 (W.D. Wash. Feb. 16, 2016), *adopted by* 2016 WL 865351 (W.D. Wash. Mar. 7, 2016) (deciding, before *Padilla-Ramirez*, that the Court need not determine whether the petitioner was detained under § 1226(a) or § 1231(a)(6) because he had been detained for more than six months and thus was entitled to a custody hearing under either statute); *Acevedo-Rojas v. Clark*, No. C14-1232-JLR, 2014 WL

1   6908540, at *6 (W.D. Wash. Dec. 8, 2014) ("[I]f petitioner is denied release at her six-month

2   DHS custody review and her release or removal is not imminent, *Diouf v. Napolitano* ("*Diouf*

3   *II*") dictates that she receive a bond hearing where the government bears the burden of

4   establishing that she presents a flight risk or a danger to the community."); *Giron-Castro v.*

5   *Asher*, No. C14-867-JLR, 2014 WL 8397147, at *2 (W.D. Wash. Oct. 2, 2014) (adopting R & R

6   recommending that the petitioner be granted a bond hearing under *Diouf II*); *Mendoza v. Asher*,

7   No. C14-811-JCC, 2014 WL 8397145, at *2 (W.D. Wash. Sept. 16, 2014) (rejecting

8   government's argument that it would improper to "extend" *Diouf II* to non-citizens detained

9   under § 1231(a)(6) following reinstatement of a removal order because "*Diouf II* does not

10  distinguish between categories of [non-citizens] whose detention is governed by § 1231(a)(6),

11  and instead applies to *every* [non-citizen] facing prolonged detention under the statute").

12          The Government recognizes some of this authority, but it urges the Court to reach a

13  different result. Dkt. 75 at 7 n.1. The Government, however, merely recycles arguments that the

14  judges on this case have considered and rejected.[6] *See Mercado-Gonzalez*, 2016 WL 871073, at

15  *4; *Giron-Castro*, No. C14-867-JLR-JPD, Dkt. 17 at 14-16 (W.D. Wash. Aug. 19, 2014),

16  *adopted by* 2014 WL 8397147 (W.D. Wash. Oct. 2, 2014). The Government offers no

17  persuasive reason to reverse course on this issue.

18          First, the Government argues this case is distinguishable from *Diouf II* because Diouf was

19  ordered removed after overstaying his student visa and could collaterally challenge the removal

20  order through an application to reopen the removal proceedings, whereas class members are

21  subject to reinstated removal orders that cannot be challenged. *Id.* at 8. This distinction is

---

[6] The Government also raises several new arguments, but these are dependent on the Court finding that *Diouf II* does not apply. *See* Dkt. 75 at 11-17. Because the Court concludes that *Diouf II* governs this case, the other arguments are not addressed.

REPORT AND RECOMMENDATION - 8

immaterial. The Ninth Circuit has made clear that "[r]egardless of the stage of the proceedings, the same important interest is at stake—freedom from prolonged detention." *Diouf II*, 634 F.3d at 1087.

The Government next asserts that this case is distinguishable from *Diouf II* because Diouf had never been previously removed from the United States, while class members have been removed before. Dkt. 75 at 8. According to the Government:

> The government's interest in detaining [non-citizens] previously removed and who have illegally reentered the United States presents qualitatively different concerns than those addressed in *Diouf II*. *Diouf II*, 634 F.3d at 1088 ("It is far from certain that § 1231(a)(6) detainees such as Diouf will be removed."). In the absence of careful consideration of the government's interest in the continued detention of previously removed individuals who have illegally reentered the United States, a sweeping extension of *Diouf II*'s requirement of an individualized bond hearing for individuals being held in custody pursuant to 8 U.S.C. § 1231(a)(6) for more than 180 days after reinstatement of their prior removal order is unwarranted.

Dkt. 75 at 8. This argument is not well taken. The fact that it was uncertain whether Diouf would be removed was only one of four reasons the Ninth Circuit gave for finding that the government's interest in detaining § 1231(a)(6) detainees was not substantial enough to justify denying a custody hearing. The court also found that the government has an interest in ensuring that all non-citizens are available for removal, detention is permitted if it is found that the non-citizen poses a flight risk, and the petitions for review may take years to resolve. *Diouf II*, 634 F.3d at 1088. These reasons apply with full force to class members and provide ample justification for treating § 1231(a)(6) detainees subject to a reinstated order of removal the same way other § 1231(a)(6) detainees are treated.

Finally, the Government contends that unlike Diouf's removal order, class members' removal orders cannot be judicially reviewed. Dkt. 75 at 9. But class members are entitled to seek Ninth Circuit review of the BIA's final determination regarding their withholding of

REPORT AND RECOMMENDATION - 9

removal applications. Thus the Ninth Circuit's central concern in *Diouf II*—prolonged detention while petitions for review are resolved—is equally applicable here.

Contrary to the Government's arguments, Court need not "extend" *Diouf II* to find that it governs this case. The Ninth Circuit's holding in *Diouf II* was broadly worded: "We hold that *individuals* detained under § 1231(a)(6) are entitled to the same procedural safeguards against prolonged detention as individuals detained under § 1226(a)." 634 F.3d at 1084 (emphasis added). The court recognized that § 1231(a)(6) encompasses non-citizens "such as Diouf, whose collateral challenge to his removal order (a motion to open) is pending in the court of appeals, *as well as* to [non-citizens] who have exhausted all direct and collateral review of their removal orders but who, for one reason or another, have not yet been removed from the United States," yet it did not narrow its holding. *Id.* at 1085 (emphasis added). Although there are some differences between class members and Diouf, none of those differences undermine the Ninth Circuit's ultimate concern that "prolonged detention under § 1231(a)(6), without adequate procedural protections, would raise 'serious constitutional concerns.'" *Diouf II*, 634 F.3d at 1086 (quoting *Casas-Castrillon*, 535 F.3d at 950). Class members' current prolonged detention without the opportunity for a hearing before an IJ raises such constitutional concerns. Accordingly, they are entitled to relief.

*Diouf II* held that non-citizens detained under § 1231(a)(6) should have the same procedural safeguards as those detained under § 1226(a). 634 F.3d at 1086. Ninth Circuit authority thus dictates that class members be afforded custody hearings before an IJ where the Government bears the burden of justifying continued detention by clear and convincing evidence. *Id.* at 1086, 1092; *see also Rodriguez III*, 804 F.3d 1085-89; *Singh*, 638 F.3d at 1203. Class members must automatically receive such hearings after they have been detained for 180

days and every 180 days thereafter.[7] *Diouf II*, 634 F.3d at 1092; *Rodriguez III*, 804 F.3d at 1085, 1089. In addition, the custody hearings must comply with the other procedural safeguards established in *Singh* and *Rodriguez III*. As detailed in the Court's proposed Order, the Government should be required to report to the Court on its execution of the Court's order, and the Court should retain jurisdiction over any disputes that arise between the parties on this issue.

In sum, judgment should be granted in class members' favor on the second cause of action. It is past time for the Government to follow the law of this Circuit as established in *Diouf II*.

**B.     Class members are not entitled to relief on their due process claim**

It is well established that the Court must avoid reaching constitutional questions in advance of the necessity of deciding them. *See, e.g.*, *Rosenberg v. Fleuti*, 374 U.S. 499, 451 (1963); *Diouf II*, 634 F.3d at 1086 (declining to reach due process claim where issue could be resolved on non-constitutional grounds). Because the Court has concluded that class members are entitled to relief under § 1231(a)(6), as construed by the Ninth Circuit in *Diouf II*, it should not resolve the question of whether the Government also violated the Due Process Clause. Accordingly, judgment should be granted in the Government's favor on the third cause of action.

## CONCLUSION AND RIGHT TO OBJECT

Both the parties' cross-motions for summary judgment (Dkts. 72 & 75) should be **GRANTED** in part and **DENIED** in part. A proposed Order that provides additional details regarding this recommendation is attached.

---

[7] There is one caveat: "If the 180-day threshold has been crossed, but the [non-citizen's] release or removal is imminent, DHS is not required to conduct a 180-day review, *see* 8 C.F.R. § 241.4(k)(3), and neither should the government be required to afford the [non-citizen] a hearing before an immigration judge." *Diouf II*, 634 F.3d at 1092 n.13. However, "DHS should be encouraged to afford a [non-citizen] a hearing before an immigration judge *before* the 180-day threshold has been reached if it is practical to do so and it has already become clear that the [non-citizen] is facing prolonged detention." *Id.* (emphasis in original).

REPORT AND RECOMMENDATION - 11

1  This Report and Recommendation is not an appealable order.  Therefore a notice of
2  appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the
3  assigned District Judge enters a judgment in the case.  Objections, however, may be filed and
4  served upon all parties no later than **February 7, 2018**.  The Clerk should note the matter for
5  **February 9, 2018**, as ready for the District Judge's consideration if no objection is filed.  If
6  objections are filed, any response is due within 14 days after being served with the objections.  A
7  party filing an objection must note the matter for the Court's consideration 14 days from the date
8  the objection is filed and served.  The matter will then be ready for the Court's consideration on
9  the date the response is due.  Objections and responses shall not exceed ten pages.  The failure to
10 timely object may affect the right to appeal.

11  DATED this 23rd day of January, 2018.

BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 12